JS - 6

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| KIM SENG COMPANY, | ) | Case No. CV10-742 CAS (MANx) |
| Plaintiff, | ) | |
| vs. | ) | **ORDER GRANTING DEFENDANT J&A'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF KIM SENG'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| J&A IMPORTERS, INC., ET AL.; | ) | |
| Defendants. | ) | |
| _____ | ) | |

I.  **INTRODUCTION**

On February 2, 2010, plaintiff Kim Seng Company ("Kim Seng") filed a complaint against defendants J&A Importers, Inc. ("J&A") and Does 1-50. The complaint alleges trade dress infringement, 15 U.S.C. § 1125(a), copyright infringement, 17 U.S.C. § 501(a), unfair competition pursuant to Cal. Bus. & Prof. Code §§ 17200 et seq., and common law unfair competition.[1]

---

[1]The third and fourth claims for relief, respectively for violations of Cal. Bus. & Prof. Code § 17200 and common law unfair competition, incorporate by reference, and are
(continued...)

On August 1, 2011, Kim Seng filed a motion for partial summary judgment as to copyright infringement and J&A filed a cross motion for summary judgment as to all claims, or in the alternative, for partial summary adjudication.[2] After carefully considering the arguments set forth by both parties, the Court finds and concludes as follows.

## II. BACKGROUND

Kim Seng and J&A are competing Chinese-Vietnamese food supply companies. The gravamen of their dispute centers on the intellectual property rights as they relate to their respective rice stick food packages. Compl. ¶ 13. Each package depicts a photograph of a bowl filled with rice sticks, topped by foodstuffs such as egg rolls, grilled meat, and assorted garnishes. See Pl. Mot. at 1. Both packages have a yellow background with red trimming and contain various Chinese, Vietnamese, and English words. Id. The Kim Seng Package advertises "Bun Cha Gio Thit Nuong" and the J&A Package advertises "Bun Thit Nuong Cha Gio," which, according to the parties, roughly translates into "rice stick, egg roll, grilled meat." Def. Mot. at 18; Def. Reply at 7.

Kim Seng asserts that it began using its packaging ("Kim Seng Package") in 2002. Plaintiff's Statement of Uncontroverted Facts ("Pl. SUF") ¶ 5. J&A began using its packaging ("J&A Package") in 2009. Defendant's Statement of Genuine Issues

---

[1](...continued)
based solely on, those allegations in the complaint that allege copyright and trade dress infringement. See compl. ¶¶ 52, 55.

[2]In addition, the parties filed evidentiary objections to evidence submitted by the opposing party. The Court sustains J&A's objections as to the Khuu Declaration Nos. 4 and 5 as hearsay pursuant to Fed R. Evid. 802; No. 6 as a lack of personal knowledge pursuant to Fed R. Evid. 602; and No. 9 as irrelevant pursuant to Fed R. Evid. 402. The Court sustains J&A's objection as to the Tsai Declaration No. 1 as an improper legal conclusion. The Court sustains J&A's objection as to the Price Declaration No. 1 as irrelevant pursuant to Fed R. Evid. 402. Because the Court does not rely on the evidence to which the remainder of defendant's or plaintiff's objections are addressed, the Court denies those objections as moot.

("DSGI") ¶ 7.  Shortly thereafter, Kim Seng sent a cease and desist letter to J&A, alleging that the J&A Package infringed on both the trade dress and copyrights contained in the Kim Seng Package.  Plaintiff's Statement of Genuine Issues ("PSGI") ¶ 11.  Kim Seng copyrighted its package design effective March 10, 2003, with a "first publication" date of January 5, 1998.  DSGI ¶ 31; Reg. No. VA-1-190-640; Decl. of Daniel Cislo in Support of J&'s Motion ("Cislo Decl.") Exh. 9.  On January 12, 2010, Kim Seng filed a "Form CA" to amend its registration by listing the first publication date as July 3, 2002, and by adding "3-Dimensional sculpture" in lieu of "photograph" as the nature of authorship.  Cislo Decl. Exh. 7; Bates Nos. KS 000014-20.  On September 1, 2010, the U.S. Copyright Office rejected the supplementary registration because Kim Seng's copyright claim on the 3-dimensional sculpture would "fundamentally change the original registration" of a 2-dimensional packaging design.  Cislo Decl. Exh. 22.

  Kim Seng contends that it owns the copyrights to both the underlying bowl-of-food "sculpture" and the photograph depicting the bowl.  Pl. Mot. at 9.  Kim Seng asserts that the underlying sculpture was "created" by Yiyong Tsai, a Kim Seng employee, during the course of her employment.  Id. at 7.  Specifically, Kim Seng claims that Tsai dictated the layout and details of the bowl of food to a third party, Yen Khuu, who physically purchased the bowl and food and constructed it.  Id.  Khuu is employed by Fortune Asian, the company that commissioned independent contractor Amy Peng to photograph the bowl of food.[3]  Id. at 3-4.  According to Kim Seng, Peng purportedly "intended to convey ownership" of her copyright in the photograph by "delivering the photographic negative" to Fortune Asian.  Id. at 8.  Kim Seng notes that "[e]fforts to locate and communicate with [Amy Peng] have been fruitless," but that nevertheless her delivery of the negative constituted an effective conveyance.  Id. at 8 n.1.  Subsequently,

---

[3] The photographer's last name is listed as both Peng and Pang at various points in the moving papers.  Because Kim Seng lists "Peng" in its initial motion for summary judgment, the Court uses that spelling herein.

3

Fortune Asian allegedly "intended to assign all right to Kim Seng and executed a written confirmation of assignment effective in . . . 2002." Id. at 10.

Although "J&A ultimately disputes the origin of the Kim Seng Package," for the purposes of Kim Seng's motion J&A accepts the above facts. Def. Mot. at 6 n.1. J&A separately notes that Kim Seng's copyright registration for the Kim Seng Package was issued on March 10, 2003, more than five years after January 5, 1998, the date listed on the registration of first publication.[4] Furthermore, J&A observes that Kim Seng's "Form CA" claims that "Kim Seng obtained ownership of the copyright in the photograph by assignment." Id. at 7.

### III.  LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871,

---

[4]Kim Seng claims to have corrected its registration to reflect a first publication date of July 3, 2002. PGSI ¶ 32. J&A's response includes a screenshot from the U.S. Copyright Office that indicates the "first publication" date remains January 5, 1998. Def. Reply to PGSI ¶ 32. J&A notes that "[s]ubmitting a supplemental registration application that never issued is not evidence that the registration itself was amended." Id. at 21. On August 24, 2011, the Court independently verified that the U.S. Copyright website reflects a first publication date of January 5, 1998.

4

888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

**IV. DISCUSSION**

As an initial matter, the Court finds that Kim Seng's copyright registration does not give rise to *prima facie* evidence of copyright validity. Under 17 U.S.C. § 410(c), a copyright holder is entitled to *prima facie* evidence of the validity of the copyright if it had been registered within five years after first publication of the work. Id. Kim Seng's copyright registration indicates that it was issued March 10, 2003, and lists January 5, 1998, as the first date of publication. Cislo Decl. Exh. 9; Reg. No. VA-1-190-640. Although Kim Seng has filed a Form CA to amend the first publication date to July 2002 and to add "3-Dimensional sculpture" to the registration's ambit, the U.S. Copyright Office rejected the proposed amendments on September 1, 2010, for the reasons set forth above. As of August 23, 2011, Kim Seng's copyright maintains January 5, 1998 as the date of first publication. Accordingly, Kim Seng's copyright registration presently does

not constitute *prima facie* evidence of copyright validity, and its evidentiary weight is left to the Court's discretion.  17 U.S.C. § 410(c).

### 1.     **Copyright Claims**

In order to establish copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

Kim Seng claims to own copyrights in both the bowl-of food sculpture and the photograph of the food.[5]  Pl. Mot. at 8.  As to the photograph specifically, Kim Seng asserts that it is either a derivative work of its underlying sculpture pursuant to 17 U.S.C. § 103, or alternatively, that Amy Peng assigned her interest in the photograph to Fortune Asian, which then assigned that interest to Kim Seng.  Id.  J&A contends that the food sculpture is not copyrightable, that the photograph is not a derivative work, and that Kim Seng cannot demonstrate ownership of the photograph.  Opp. at 9, 12, 14.  Each copyright claim is addressed below.

///
///
///
///
///
///
///

---

[5] It is unclear whether Kim Seng separately claims a copyright in the cooking instructions on its packaging.  It appears that Kim Seng cites the cooking instructions in its motion to demonstrate copying by J&A, and not because it believes the instructions are independently copyrightable.  See Pl. Mot. at 11.  The Court will address only the purported copyrights in the bowl of food and photograph.

### A. The Bowl of Food Sculpture[6]

Kim Seng contends that it owns the underlying copyright to the bowl of food because its employee, Yiyong Tsai, directed Fortune Asian employee Yen Khuu to create it. Mot. at 3-4. Assuming this to be true, the bowl of food must still meet the requirements for a "valid" copyright. A sculptural work is copyrightable if it is a work of original authorship fixed in a tangible medium of expression, demonstrates sufficient creativity, and contains artistic aspects that are separable from its utilitarian functions. 17 U.S.C. § 101; Feist, 499 U.S. at 346.

#### i. Original Work of Authorship

Copyright protection extends only to "original works of authorship." 17 U.S.C. § 102. "Although the amount of creative input by the author required to meet the originality standard is low, it is not negligible." Satava v. Lowry, 323 F.3d 805, 810 (9th Cir. 2003). "[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." Id. at 811.

Kim Seng claims that Yiyong Tsai "chose the foods out of thousands of possibilities, and directed their arrangement to be in a certain fashion out of infinite possibilities." Pl. Opp. at 7. It notes that "[t]he egg rolls or meat rolls could have been

---

[6]It is questionable whether the copyrightability of the bowl-of-food is relevant for purposes of the present motions. Based on Kim Seng's registered copyright, it could not sue for copyright infringement based on the "sculpture" alone. See Cislo Declr. Exh. 7; Reg. No. VA 1-190-640 (describing the nature of authorship as "2-Dimensional artwork" and "Photograph"; the boxes for "3-Dimensional sculpture" and "Text" are not checked). It is well established that the Copyright Act requires copyright holders to register their works before suing for copyright infringement. 17 U.S.C. § 411(a); Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1241 (2010). Because Kim Seng asserts that the photograph is a derivative of the underlying sculpture, however, an analysis of the bowl's copyrightability is appropriate.

angled at any of 360 degrees." Id. at 7-8. Such selection and arrangement, Kim Seng contends, constitute originality and a basis for infringement. Id. at 8.

J&A argues that the combination of "two preexisting, non-original elements," a bowl and the contents of a common Vietnamese dish, "lacks the quantum of originality needed to merit copyright protection." Def. Reply at 8 (quoting Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1147 (9th Cir. 2003)).

In Savata, the Ninth Circuit held on originality grounds that plaintiff Savata could not copyright his jellyfish-in-glass sculptures. 323 F.3d at 810-11. Specifically, the court ruled that "[t]he selection of the clear glass, oblong shroud, bright colors, proportion, vertical orientation, and stereotyped jellyfish form, considered together, lacks the quantum of originality needed to merit copyright protection." Id. at 811.

In Lamps Plus, the Ninth Circuit similarly held that the combination of "four preexisting ceiling-lamp elements with a preexisting table-lamp base did not result in the expression of an original work of authorship." 345 F.3d at 1147. The court noted that "when determining whether a sculpture contains sufficient originality to qualify for copyright protection it makes no sense to include the utilitarian aspects of the object in the analysis." Id. at 1146 (internal quotation marks and citation omitted).

Here, like Savata and Lamps Plus, Kim Seng purports to copyright a combination of unprotectable elements–a common bowl, and the ingredients of a traditional Vietnamese dish. The food items cannot be separated from their utilitarian function, which is to be eaten. Id. In Savata, the artist's decisions to use clear glass, brightly colored jellyfish, and vertical orientation, "though beautiful," did not satisfy § 101's originality requirement because the elements were unprotectable; by direct analogy, regardless of which angle, quantity, or positioning of the various food items Kim Seng utilized, the unprotectable nature of the ingredients indicates a lack of originality. 323 F.3d at 811; Lamps Plus, 345 F.3d at 1147.

Accordingly, Kim Seng's purported copyright in the bowl of food must fail for

want of originality.

### ii. Fixed in a Tangible Medium

Even assuming the bowl of food is an original work of authorship, it must still satisfy the Copyright Act's fixation requirement. "A work is 'fixed' in a tangible medium of expression when its embodiment . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101.

Kim Seng offers no evidence that its bowl of food satisfies the Copyright Act's fixation requirement. J&A contends that, because the food is perishable, it cannot be considered "fixed" for copyright purposes.

In Kelley v. Chicago Park Dist., the Seventh Circuit, as a matter of first impression, analyzed whether an artistically arranged garden ("Wildflower Works") was constitutionally "fixed" for the purposes of the Copyright Act. 635 F.3d 290, 303 (7th Cir. 2011). It held that a living garden "lacks the kind of authorship and stable fixation normally required to support copyright." Id. Although recognizing that "the artistic community might classify [Wildflower Works] as a work of postmodern conceptual art," and that "copyright's prerequisites of authorship and fixation are broadly defined," the garden nonetheless "owes most of its form and appearance to natural forces" and "is not stable or permanent enough" to be a work of fixed authorship. Id. at 104.

Kim Seng admits the bowl of food here is comprised of a perishable Vietnamese dish purchased by Yen Khuu from a local restaurant. Decl. of Yen Khuu ("Khuu Decl.") in Support of Pl. Mot. at 45. Like a garden, which is "inherently changeable," a bowl of perishable food will, by its terms, ultimately perish. Indeed, if the fact that the Wildflower Works garden reviving itself each year was not sufficient to establish its fixed nature, a bowl of food which, once it spoils is gone forever, cannot be considered "fixed" for the purposes of § 101. Kelley, 635 F.3d at 304-05.

///

Although a garden is distinguishable from a bowl of food, in that the garden itself may be considered alive and self-cultivating, the purposes underlying the fixation requirement–to "ease[] problems of proof of creation and infringement"–apply with equal force to a garden and a bowl of perishable food. 2 Patry, Patry on Copyright, § 3:22. Accordingly, a bowl of perishable food is not "fixed" for the purposes of the Copyright Act.[7] Although the fixation requirement is read broadly, "the law must have some limits; not all conceptual art may be copyrighted. In the ordinary copyright case, authorship and fixation are not contested; most works presented for copyright are unambiguously authored and unambiguously fixed." Kelley, 635 F.3d at 304. This case, however, like the garden in Kelley, is "not an ordinary case." Id.[8]

### iii.    Sufficient Creativity

To the extent Kim Seng asserts that its bowl of food is a compilation of items, a compilation must embody more than a trivial degree of creative selection. Feist, 499 U.S. at 362. "While this requirement is sometimes characterized as modest, or a low threshold, it is not without effect." Id. "[T]he selection or arrangement of facts cannot be so mechanical or routine as to require no creativity whatsoever." Id. In Feist, a telephone book company's mechanical arrangement of the telephone numbers and addresses of its area-wide populous did not establish sufficient creativity. Id.

In its papers Kim Seng does not directly address creativity, though its arguments regarding originality apply here. Specifically, Kim Seng asserts that Ms. Tsai "chose the foods out of thousands of possibilities, and directed their arrangement to be in a certain fashion out of infinite possibilities." Pl. Opp. at 7.

---

[7] Kim Seng does not cite, and the Court cannot find, any cases standing for the proposition that a perishable bowl of food–especially a common dish–is "fixed" for the purposes of copyright law.

[8] Obviously, a photograph of the bowl of food might be "fixed" within the Act's definition; but that does not establish that its underlying subject matter, the perishable bowl of food, is equally capable of being "fixed." The photograph is discussed infra.

J&A responds that the Kim Seng Package belies Kim Seng's assertion, because "Bun Cha Gio Thit Nuong," in English, translates roughly to "rice stick, egg roll, grilled meat." Def. Reply at 7. J&A contends, therefore, that "the choice of foods was entirely mechanical." Id.

The Court agrees with J&A that Kim Seng's food "choices" were dictated by the plain meaning of the bold Vietnamese words on the package. However, the arrangement in the bowl itself was not "so mechanical or routine as to require no creativity whatsoever." Feist, 499 U.S. at 362. Assuming Kim Seng's assertions are true, i.e. that Ms. Tsai dictated to Khuu the arrangement of the various foodstuffs in the bowl, her actions might demonstrate sufficient creativity to surpass the low threshold established in Feist.

Nevertheless, for the reasons set forth above, Kim Seng's asserted copyright in the bowl of food must fail because it is not an original authorship fixed in a tangible medium of expression.

### B.     The Photograph

Assuming, arguendo, that the sculpture is copyrightable and owned by Kim Seng, Kim Seng asserts that the photograph is a derivative work of the sculpture pursuant to 17 U.S.C. § 101. Pl. Mot. at 8.

Alternatively, Kim Seng contends that Amy Peng assigned her ownership rights in the photograph to Fortune Asian, which then assigned its rights to Kim Seng. Id.

### i.     Derivative Work

Kim Seng asserts that it "contributed an element of creativity (the subject matter) to the photo" and that it authorized Amy Peng to take the photograph. Pl. Mot. at 8. In other words, Kim Seng claims that because the photograph is based on the sculpture–which itself is purportedly valid copyrightable subject matter owned by Kim Seng–the photograph must be a derivative, and therefore owned by Kim Seng. Id.

///

Kim Seng's argument misses a fundamental point, which is that in order to create a derivative work, the underlying work must be copyrightable. In Ets-Hokin v. Skyy Spirits, Inc., the Ninth Circuit held that photographs of a blue vodka bottle could not be considered derivative works because the bottle, "although attractive," had no special design or other features that could exist independently a work of art. 225 F.3d 1068, 1080 (9th Cir. 2000).

As discussed above, the Court finds that the underlying bowl of food is not copyrightable. Accordingly, Amy Peng's photograph cannot be considered a derivative work.[9]

### ii. Assignment

Even if Peng's photograph is not considered a derivative work of the underlying sculpture, it is itself a copyrightable work. 17 U.S.C. § 102(5) ("pictoral, graphic, and sculptural works" constitute one category of copyrightable subject matter). Copyright in a work "vests initially in the author . . . of the work." 17 U.S.C. § 201(a). "Absent an express transfer of ownership, a contributor who is not an employee retains ownership of his copyright." Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 558 (9th Cir. 1990). Peng, an independent photographer not employed by Kim Seng or Fortune Asian, is the original owner of her food bowl photograph. Pl. SUF ¶ 3.

Kim Seng alleges that Amy Peng transferred her rights in the photograph to Fortune Asian, which then purportedly executed a written assignment to Kim Seng. Pl. Mot. at 8. Kim Seng claims that Peng accomplished this transfer by "delivering the

---

[9]Assuming, arguendo, that Kim Seng owns a valid copyright in the underlying sculpture, the photograph may not constitute a "derivative work" for the purposes of § 103. The courts are split on the issue. Compare Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1077-1082 (9th Cir. 2000) (a photograph might be a derivative of the underlying work) with SHL Imaging, Inc. v. Artisan House, Inc., 117 F. Supp. 2d 301, 305 (S.D.N.Y. 2000) (a photograph cannot be a derivative of the underlying work). Because the Court finds that the bowl is not copyrightable, however, it need not address this issue.

1  photographic negative" to Fortune Asian.  Id.  By way of logic, Fortune Asian's
2  purported transfer to Kim Seng may be valid only if it owned rights in the photograph
3  itself.  Thus, the question is whether Peng's alleged transfer to Fortune Asian was valid.
4      "The ownership of a copyright may be transferred in whole or in part by any
5  means of conveyance or by operation of law."  17 U.S.C. § 201(d)(1).  "A transfer of
6  copyright ownership . . . is not valid unless an instrument of conveyance, or a note or
7  memorandum of the transfer, is in writing and signed by the owner of the rights
8  conveyed."  17 U.S.C. § 204(a).  "The [§ 204(a)] rule is really quite simple: If the
9  copyright holder agrees to transfer ownership to another party, that party must get the
10 copyright holder to sign a piece of saying so."  Radio Television Espanola S.A. v. New
11 World Entm't, Ltd., 183 F.3d 922, 927 (9th Cir. 1999) (internal quotation marks and
12 citations omitted).  "Transfer of ownership of any material object . . . does not itself
13 convey any rights in the copyrighted work embodied in the object."  17 U.S.C. § 202.
14 "[T]his includes transfer of . . . the photographic negative . . . in which the work was first
15 fixed."  H.R. No. 94-1476 at 124.  "[I]t has long been recognized that the sale or other
16 transfer of a material object embodying a work protected by statutory copyright does not
17 in itself constitute an assignment or license of such copyright."  3 Nimmer, Nimmer on
18 Copyright § 10.09[A] at 10-78.3.
19     Here, Kim Seng admits that Amy Peng "intended to convey ownership" of the
20 photograph to Fortune Asian "by delivering the photographic negative" and offers no
21 evidence that her intention was memorialized in writing.  Pl. Mot. at 8.  Kim Seng
22 acknowledges that any efforts to locate Peng have been fruitless, and that "we are left
23 with the statements and understanding of the person that communicated with the
24 photographer at the time and the photographer's act of delivering over the negative."  Id.
25 at n.1.  Kim Seng claims that Peng's delivery of the negative "was a 'writing'" within
26 the meaning of § 204(a), and if not a writing, it is "assuredly evidence [of] an *exclusive*
27 license."  Id. at 8-9 (emphasis in original).
28

13

Kim Seng's arguments are unavailing. By its very terms, the Copyright Act explicitly requires any transfer of copyright ownership or exclusive license to be memorialized in a signed, written document. 17 U.S.C. § 204(a). Kim Seng does not cite, and the Court has not found, any case law that deviates from this principle. See, e.g., Radio Television, 183 F.3d at 927; Effects Assocs., 908 F.2d at 558. Kim Seng admits there is no written agreement between Amy Peng and Fortune Asian. As a matter of law, Peng never validly transferred her copyright interest in the photograph or granted an exclusive license to Fortune Asian. Accordingly, Fortune Asian's purported assignment of the photograph to Kim Seng must fail on the grounds that Fortune Asian never owned rights in the photograph.[10]

---

[10]The Court recognizes that the Ninth Circuit has noted, in dicta, that "[w]hen there is no dispute between the copyright owner and transferee, it would be unusual and unwarranted to permit a third-party infringer to invoke § 204(a) to avoid suit for copyright infringement." Jules Jordan Video, Inc. v. 144942 Canada Inc., 617 F.3d 1146, 1157 (9th Cir. 2010). The court explained that § 204(a) "is designed to resolve disputes between owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership." Id.

In Jules, the plaintiff Gasper, an adult movie star, was the president and sole owner of Jules Jordan Video ("JJV"), the company that created the videos in which Gasper appeared. Id. at 1149. Defendants argued that because Gasper never memorialized in writing any purported transfer of copyright ownership in his adult films to JJV, he could not sue them for copyright infringement. Id. at 1156. The Ninth Circuit logically noted that "there was no need [for Gasper] to defraud anyone with respect to ownership" of the copyrights, because "[a] simple written note or memorandum of transfer signed by himself on behalf of JJV would have been sufficient." Id. Accordingly, it would have been "unwarranted" for the defendants to invoke § 204(a) to avoid a copyright infringement suit.

Kim Seng asserts that, like Jules, here there is no dispute between the copyright owner (Peng) and transferee (Kim Seng, via Fortune Asian), and that J&A should therefore not be able to avoid suit on those grounds. Kim Seng's arguments are unpersuasive. Unlike Jules, Peng is unavailable to testify as to her purported intent to convey ownership
(continued...)

Without submitting any facts tending to show Amy Peng validly assigned her interests in the photograph to Fortune Asian, Kim Seng could never have had a valid copyright in the photograph and its copyright infringement claim must fail.

### iii. *Scenes a Faire*

Even if Kim Seng owns a copyright in the photograph, J&A's use of the photograph may be protected under the doctrine of *scenes a faire*. *Scenes a faire*, roughly translated as "scenes which 'must' be done," rationalizes that there should be no monopoly on an underlying unprotectable idea. Ets-Hokin, 225 F.3d at 1082. "The Ninth Circuit treats *scenes a faire* as a defense to infringement rather than as a barrier to copyrightability." Satava, 323 F.3d at 810 n.3.

In Oriental Art Printing, Inc. v. Goldstar Printing Corp., the plaintiff, a printing company that specialized in printing Chinese restaurant menus, owned copyrights in several photographs of "common, but unlabeled, Chinese food dishes, arranged in various patterns" on the menu. 175 F. Supp. 2d 542, 544 (S.D.N.Y. 2001). The court held that such menus were uncopyrightable subject matter because they lacked originality and creativity. Id. at 546. The court further opined that even if the photographs were original works capable of being copyrighted, "each of the potentially protectable elements, i.e. the photographs' lighting, angle, and the choice of plates, flow necessarily from the subject matter of the photographs" and therefore would be unprotectable under *scenes a faire*. Id. at 547 n.3.

///

Like Oriental Art, allowing copyright protection for a photograph of a common

---

(...continued)
in her copyright and the only evidence of her intent to convey her interest are several hearsay statements made by Kim Seng. Permitting Kim Seng to claim ownership of the photograph's copyright based on its own submitted facts is contrary to § 204(a)'s implicit purpose of preventing entities from mistakenly or fraudulently claiming oral licenses or copyright ownership. Thus, Jules is inapposite.

15

Vietnamese dish might give Kim Seng a monopoly over using such photographs on food packages.  Any protectable elements of the photograph at issue "flow[s] necessarily from the subject matter of the photograph," i.e., the Vietnamese dish, and provides J&A with a defense to infringement.  Id.

### iv. Conclusion

In light of the foregoing, the Court GRANTS J&A's motion for summary judgment as to the copyright claims on the bowl of food and photograph.

### 2. Trade Dress Claims

To succeed on an unregistered trade dress infringement claim under the Lanham Act, a plaintiff must prove that (1) the defendant's trade dress creates a likelihood of consumer confusion, and (2) that the plaintiff's trade dress is protectable.  Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 210 (2000).  Product-packaging trade dress is protectable if it is either inherently distinctive or has acquired a secondary meaning.  Id. at 215; Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 766 (1992).

J&A moves for summary judgment on Kim Seng's trade dress claims.  Def. Mot. at 18.  Specifically, J&A contends that Kim Seng has offered no evidence of inherent distinctiveness of its package  nor evidence of an acquired secondary meaning.  Id. at 19-21.[11]  J&A notes that it is the moving party and does not bear the burden of proof on the claim at trial, meaning Kim Seng must present evidence upon which a reasonable jury could reasonably find in Kim Seng's favor.  Def. Reply at 23; Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986).

The Court must determine whether Kim Seng has adduced enough evidence

---

[11]At oral argument, J&A indicated that, based on a recent survey, it disputes whether its package creates a likelihood of consumer confusion.  However, because Kim Seng has failed to allege facts tending to show inherent distinctiveness or an acquired secondary meaning, J&A has not relied on this evidence for purposes of the present motion.  See Def. Mot. at 18-22; Def. Reply at 23-24.  Accordingly, the Court declines to address it here.

tending to show that the Kim Seng Package is either inherently distinctive or has acquired a secondary meaning.

### A.     Inherent Distinctiveness

"Marks are often classified in categories of generally increasing distinctiveness." Two Pesos, 505 U.S. at 768. "[T]hey may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." Id. "[I]f an unregistered mark is deemed merely descriptive . . . proof of secondary meaning is required; however, suggestive marks are eligible for protection without any proof of secondary meaning." Id. at 773 (internal quotation marks and citation omitted).

The primary criterion for distinguishing between a suggestive and descriptive trade dress "is the imaginativeness involved in the suggestion, that is, how immediate and direct is the thought process from the [trade dress] to the particular product." Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1198 (9th Cir. 2009) (internal quotation marks and citation omitted). A trade dress is suggestive "if imagination or a mental leap is required in order to reach a conclusion as to the nature of the product being referenced . . . [b]y contrast, a mark is descriptive if it defines a particular characteristic of the product in a way that does not require any exercise of the imagination." Id. (internal quotation marks and citation omitted). "Deciding whether a mark is distinctive or merely descriptive is far from an exact science and is a tricky business at best." Id. (internal quotation marks and citation omitted).

Here, Kim Seng asserts that the bowl of food depiction on the Kim Seng Package "may suggest, with some thought, that the contents are uncooked rice noodles, but that does not *immediately* come to mind by the picture alone." Pl. Opp. at 20 (emphasis in original). In other words, Kim Seng argues that a consumer would need to use more than a small amount of imagination to make the association between the Kim Seng Package and the bare rice sticks it contains.

Furthermore, Kim Seng offers expert testimony from Kristina Sing, a senior brand

17

strategist of Dog Bollocks 5, LLC, an opinion research firm. Pl. Opp. Exh. 2 ("Sing Decl.") at 2. Specifically, Sing's survey revealed that 45 percent of respondents felt that the Kim Seng Package and J&A Package were from the same company or from affiliated companies. Id. at 14. Of those, 80 percent said that the yellow color of the packages confused them, while 89 percent indicated the photograph as the reason why they thought the two packages came from the same or affiliated companies. Id.

Kim Seng offers no evidence that the Kim Seng Package has acquired a secondary meaning.

J&A counters that Kim Seng has produced no expert report and no documentary evidence to support a finding if inherent distinctiveness. Def. Mot. at 20. J&A contends that Sing's survey should be given weight only as to the question of consumer confusion, and not as to the question of inherent distinctiveness. Id. According to J&A, the only evidence of inherent distinctiveness is Kim Seng's counsel's arguments, which is improper. Def. Reply at 24.

The Court finds that while Kim Seng has offered Sing's consumer survey demonstrating consumer confusion, it has failed to show whether the Kim Seng Package is inherently distinctive or has acquired a secondary meaning. Specifically, Kim Seng offers nothing in response to J&A's contentions that Kim Seng has produced no expert report and no documentary evidence to support a finding of inherent distinctiveness and that numerous other packages of Asian noodles feature bowls of noodles topped with egg rolls, grilled meat, Vietnamese and Chinese writing, and bright colors. See PSGI ¶¶ 76, 78. Although Kim Seng claims that Sing's survey bears on both inherent distinctiveness and consumer confusion, the very basis of the survey–"to determine whether there was a greater likelihood of source confusion between the packages of two brands of dry rice noodles"–belies that assertion. Sing Decl. at 3.
///

Furthermore, mere attorney argument does not defeat a properly supported

18

summary judgment motion.  British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978) ("The only statements we can find in the record that the crash was caused by a defective fin attachment fitting were made by counsel for [plaintiffs].  But legal memoranda and oral argument are not evidence, and they cannot themselves create a factual dispute sufficient to defeat a summary judgment motion.")  Accordingly, Kim Seng has failed to raise a basis for finding a disputed issue of material fact as to the first requirement of its trade dress claim.

Finally, notwithstanding Kim Seng's failure to provide sufficient evidence tending to show inherent distinctiveness or an acquired secondary meaning, the Court finds that the Kim Seng Package is descriptive.  It is true that the photograph on the package contains food other than what is found inside the package; however, the package also clearly states "Bun Cha Gio Thit Nuong," a common Vietnamese dish, which roughly translates to "rice stick, egg roll, grilled meat"; i.e., precisely what the bowl of food depicts.  Moreover, the package itself contains a see-through window through which any consumer can see its contents.  The totality of the circumstances reveals that the Kim Seng Package is descriptive, and there is no evidence proffered to enable the Court to find a triable issue of fact as to whether the Kim Seng package has acquired a secondary meaning.  Kim Seng's trade dress claim, therefore, fails as a matter of law.  Accordingly, its third and fourth claims for unfair competition arising under Cal. Bus. & Prof. Code § 17200 and at common law, which arise out of its copyright and trade dress claims, must also fail.

///

///

///

///

///

**V.     CONCLUSION**

In light of the foregoing, Kim Seng's motion is DENIED. J&A's motion is GRANTED in its entirety.

IT IS SO ORDERED.

Dated: August 30, 2011

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE